CATHARINE LAPSLEY, ADMINISTRATRIX OF JAMES LAPSLEY, DECEASED, v. UNITED ELECTRIC COMPANY OF NEW JERSEY, PUBLIC SERVICE CORPORATION OF NEW JERSEY, AND JERSEY CITY, HOBOKEN AND PATERSON STREET RAILWAY COMPANY.

Submitted July 2, 1909—Decided November 8, 1909.

A master is not responsible for injury to or death of a servant due to the servant going into a dangerous place on the master's premises in disobedience of the master's express instructions.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and PARKER.

For the plaintiff, *Michael J. Tansey* and *Patrick J. Dolan.*

For the defendant, *Leonard J. Tynan.*

The opinion of the court was delivered by

PARKER, J.     The plaintiff's intestate was killed while in the employ of the United Electric Company of New Jersey, by coming in contact with a "stud" highly charged with electricity, in the basement of a building occupied by said company as an electrical "sub-station" in Jersey City. Deceased was employed as an electrician's helper, and he, with others, including his foreman, had been sent into the basement to board over a hole communicating with the floor above. He was on his way out for another piece of board when he was killed. This action was brought by his widow as administratrix for the benefit of the next of kin, on the theory that his death was due to negligence of the three defendants or one of them. At the trial it was substantially conceded that the United Electric Company was the only defendant that could be charged with liability, and though no formal nonsuit or di-

rection was awarded as to the other defendants, the case for all practical purposes proceeded as against the United Electric Company alone. On behalf of that company there was a motion to nonsuit on the grounds that no negligence of defendant was shown, and of contributory negligence of deceased, which motion was denied. There was also a motion to direct a verdict, which was also denied, and the case submitted to the jury, who found for the plaintiff. The propriety of each of these rulings is challenged on this rule to show cause, and it is also claimed that the verdict was against the weight of evidence and the charge of the court.

The important controversy on the facts was whether deceased was rightfully in the place where he met his death, which was not the place where the men were working. The conditions in the basement were peculiar. It was rectangular in shape, seventy feet long by forty-four feet wide, and divided into a number of long compartments by masonry walls. It contained a large quantity of highly charged electrical conductors, switches and other appliances, and these were intended to be kept under a slight air pressure; so that to reach the place of work from the floor above it was necessary to pass through two doors forming an air lock, at one end of the building. From thence to the place of work, at the farthest corner of the building, there were two routes, one along the inside of the outer foundation walls, a course which while lighted adequately was full of dangerous appliances, and among them the fatal stud; the other an inner and shorter course parallel with the first, also lighted, and entirely safe. These passageways were narrow, varying from three feet nine inches to six feet in width. All the evidence shows that the working party went down through the safe inside passageway; but when deceased started to go out again, after working some time with the others, he took the outer one, and on reaching the corner of the building met his death.

There was perhaps sufficient in the evidence to raise a jury question whether Lapsley was in the outer passageway by some actual or implied direction or invitation of the defendant, and in that view of the case the court would not have been justified

in either nonsuiting or directing a verdict. But we are entirely clear that the jury disregarded the great weight of the evidence in finding, as they must have found, that he was properly there. Defendant's claim was that Lapsley had been warned and directed to keep out of the dangerous passageway. To this effect the testimony of White, the foreman, was direct and positive; and Schumacher, the electrician, under whom Lapsley was working, was equally positive, not only as to telling Lapsley not to go through the passageway in question, but also as to hearing White similarly instruct him. As against this one witness for plaintiff testified that he had not heard any such warning given by Schumacher, but admitted hearing Schumacher say that he had given it; and another testified that he heard the warning given, but that it was general, and not particularly as to the passageway in question. Both these witnesses were confronted with, and admitted signing, a written statement that they heard the warning given as claimed by defendant; and their testimony, of little value in any case, is necessarily impeached thereby.

We repeat then, that the jury in finding as they did on this point, must have disregarded the great weight of the evidence. As to this phase of the case the court charged that if deceased was warned not to go there, there could be no recovery. This instruction did not put the law any too strongly. The rule is well settled that a master is not liable for injuries sustained by a servant by reason of disobedience of the master's express instructions. In many cases this is put on the theory of contributory negligence. 26 *Cyc.* 1267; *Beckham* v. *Hillier,* 18 *Vroom* 12. In *Card* v. *Wilkins,* 32 *Id.* 296, we understand the decision to have been rested on the broader ground that a master who expressly forbids his servant to do a dangerous act is not chargeable with negligence because of the existence of the danger. In this form the rule was recognized by this court in *Humphries* v. *Raritan Copper Works,* 60 *Atl. Rep.* 62, though held inapplicable to the facts of that case. See, also, *Mellon* v. *Victor Talking Machine Co.,* 48 *Vroom* 670. This would invoke the doctrine of assumption of risk rather than that of contributory negligence. On whichever theory it is rested,

however, the result for present purposes is the same, and a recovery is barred if the deceased, as we think was demonstrated by the evidence, was forbidden to take the outside passageway.

For this reason the rule to show cause will be made absolute.